# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HARKEN FINANCIAL SERVICES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 09 C 4088 |
| v. ) | |
| ) | Honorable Amy J. St. Eve |
| BROADRIDGE FINANCIAL SOLUTIONS, INC., ) | |
| BROADRIDGE SECURITIES PROCESSING ) | |
| SOLUTIONS, INC., RIDGE CLEARING AND ) | |
| OUTSOURCING, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

For the following reasons, the Court grants Defendants Broadridge Financial Solutions, Inc. ("BFS") and Ridge Clearing and Outsourcing, Inc.'s ("Ridge") Motion to Dismiss the Complaint ("Motion to Dismiss") without prejudice.

## BACKGROUND

Plaintiff Harken Financial Services ("Harken") is a company that developed a Federal Deposit Insurance Corporation ("FDIC") Insured Bank Deposit Program (the "Program") to allow Harken's clients, primarily securities brokerage firms, to offer their account holders the option to have cash balances in their accounts "swept" to and from FDIC insured banks. (R. 1-1, Complaint, ¶¶ 1, 8.) Defendant BFS is a corporation that provides technology-based outsourcing solutions to the financial services industry, including securities processing solutions and clearing and outsourcing solutions. *Id.* at ¶ 2. Prior to March 30, 2007, BFS was a wholly-owned subsidiary of Automatic Data Processing, Inc., a division of Securities Industries Software

("ADP/SIS").  Defendant Broadridge Securities Processing Solutions, Inc. ("BSPS") is a wholly-owned subsidiary of BFS, through which BFS conducts some of its securities processing solutions business.  *Id.* at ¶ 4.  Defendant Ridge is a wholly-owned subsidiary of BSPS, through which BFS conducts its clearing and outsourcing solutions.  *Id.* at ¶ 5.  The Court will refer to BSPS, BFS, and Ridge collectively as "Defendants."

On November 21, 2005, Terrence McBride, the developer of the Program, entered into a letter of intent with ADP/SIS.  *Id.* at ¶ 10 (the "Letter of Intent").  The Letter of Intent "recorded the mutual understandings" of ADP/SIS and Terrence McBride and others, who were in the processing of organizing Harken, regarding the "contemplated distribution, processing, and development relationship" between ADP/SIS and Harken.  *Id.*  The Letter of Intent contemplated that Harken would provide ADP/SIS the opportunity to offer the Program as a service to ADP/SIS clients.  *Id.* at ¶ 11.  In return, ADP/SIS would "exclusively and actively promote and market the Program to" its brokerage firm clients who would offer the Program to their account-holders.  *Id.*  The Letter of Intent was non-binding with the exception of its non-compete provision which provided that ADP/SIS would not "form or participate in a similar Program," "develop similar services," or "develop similar software or provide similar data processing functionality as that contemplated by the Program."  *Id.* at ¶ 12.  On June 30, 2006, Harken entered into an agreement with ADP/SIS that "formalized the relationship contemplated by the Letter of Intent" (the "June 30, 2006 Agreement").  *Id.* at ¶ 13.  The June 30, 2006 Agreement also contained non-compete provisions similar to those contained in the Letter of Intent.  *Id.*

After ADP "spun-off" BFS on March 30, 2007, Harken and SIS, now a division of BSPS, entered into a Development, Distribution and Processing Agreement effective March 24, 2007 (the "Contract").  The initial term of the Contract is five years.  *Id.* at ¶ 15.  The Contract

contains a non-compete provision which provides: "[SIS][1], its affiliates, successors and permitted assigns agree not to (i) form or participate in a similar Program, (ii) provide similar services for itself or any of its affiliates as those contemplated by this Program, or (iii) develop similar software as that contemplated by this Program. This provision shall apply during the term of the Agreement and for one-year after the termination of this Agreement." (R. 1-2, Contract, § 12). In the case of a breach of the non-compete provision, the Contract provides that the non-breaching party may recover damages, as well as any other rights or remedies available to it. *Id.* The Contract also contains a provision stating that "[SIS] represents and warrants that it and its affiliates will continuously, actively and exclusively market, promote, offer and sell Harken's Program to its current and prospective clients." *Id.* at § 5(b). New York law governs the contract. *Id.* at § 17(i).

In Count I of its complaint, Harken alleges that Defendants breached the non-compete provisions of the Contract by "(i) participating in a bank deposit program similar to Harken's Program and (ii) providing services similar to those contemplated by the Harken Program to support a competing program during the term of the [Contract]." (R. 1-1, Complaint, ¶¶ 21-27.) Specifically, Harken alleges that "Ridge actively marketed to its brokerage clients, and participated in, a bank deposit program offered by a large international financial institution, which, on information and belief, was one of BSPS' largest clients." *Id.* at ¶ 25. Harken further alleges that "BSPS and/or its affiliates provided services in support of the competitor's bank deposit program that were similar to those that BSPS and its affiliates were to perform under the

---

[1] The Court recognizes that the Contract defines SIS, a division of BSPS, as "Broadridge." Given the various Broadridge entities named in the Complaint, for purposes of clarity, the Court refers to SIS using its corporate name (SIS) rather than its defined name in the Contract (Broadridge) when quoting and/or referring to the provisions of the Contract.

[Contract] exclusively in support of the Harken Program." *Id.* In Count II, Harken alleges that Defendants breached the warranty provisions of the contract by "failing to continuously, actively and exclusively market, promote, offer and sell Harken's Program to their current and prospective clients" and by "participating in, marketing, promoting, offering, and selling a competitor's bank deposit program." *Id.* at ¶¶ 29-32.

## LEGAL STANDARD

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009). Pursuant to Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). As the Seventh Circuit recently explained, this "[r]ule reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross,* 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570); *see also Limestone Dev. Corp. v. Village of Lemont, Ill.,* 520 F.3d

797, 803 (7th Cir. 2008) (amount of factual allegations required to state a plausible claim for relief depends on complexity of legal theory). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007).

## ANALYSIS

Harken brings counts for breach of contract against each of the three corporate defendants named in this action, BSPS, BFS and Ridge. In their Motion to Dismiss, Defendants BFS and Ridge argue that Harken has no breach of contract claim against them because neither entity is in privity of contract with Harken. (R. 17-1, Motion to Dismiss, p. 3). Because Harken's Complaint contains no allegations to support breach of contract claims against BFS and Ridge, the Complaint must be dismissed.

### I.  New York Contract Law

"In order to succeed on a breach of contract claim under New York law, a plaintiff must demonstrate: (1) the existence of a valid agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of the contract by the defendant; and (4) damages." *Gelfman Int'l Enters. v. Miami Sun Int'l Corp.*, 2009 WL 2242331 (E.D.N.Y. July 27, 2009) (citing *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1998)). "In order to be bound by the terms of a contract, one must be a party to a contract, a signatory to a contract, or have expressly agreed to be bound by the terms of the contract." *Id.* (citing *D'Andrea v. Rafla Demetrious*, 3 F.Supp.2d 239 (E.D.N.Y. 1996)). Here, the Contract is between Harken and SIS, a division of BSPS. (R. 1-2, Contract, p. 1). Neither BFS or Ridge signed the Contract. *Id.* at p. 9. Only SIS, a division of BSPS, is a signatory to the Contract. *Id.* In its response to BFS and Ridge's Motion to Dismiss, however, Harken argues that a factual question exists as to whether SIS/BSPS acted as

an agent of BFS and Ridge when it executed the Contract. (R. 28-1, Harken's Response to Motion to Dismiss ("Response"), pp. 4-10.)

Under New York law, "agency is defined as 'a fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'" *In re Nig. Charter Flights Contract Litig.*, 520 F. Supp. 2d 447, 460 (E.D.N.Y. 2007) (citing *L. Smirlock Realty Corp. v. Title Guar. Co.*, 70 A.D.2d 455, 464, 421 N.Y.S.2d 232, 238 (N.Y. App. Div. 1979)). A "principal . . . is liable on contracts entered into on its behalf by an authorized agent . . . ." *Id.* (citing *Key Int'l Mfg., Inc. v. Morse/Diesel, Inc.*, 142 A.D.2d 448, 453, 536 N.Y.S.2d 792, 795 (N.Y. App. Div. 1988)). An agent's authority may be actual or apparent. "It is well-settled that 'actual authority is created by direct manifestations from the principal to the agent,' and apparent authority depends on some conduct by the principal, communicated to a third party, which reasonably gives the appearance that the agent has authority to conduct a particular transaction." *Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*, 235 F.3d 738, 748 (2d Cir. 2000) (citing *Peltz v. SHB Commodities, Inc.*, 115 F.3d 1082, 1088 (2d Cir. 1997); *Ben-Reuven v. Kidder, Peabody & Co.*, 241 A.D.2d 504, 661 N.Y.S.2d 28, 29 (N.Y. App. Div. 1997)). Additionally, implied actual authority "'is dependent on verbal or other acts by a principal which reasonably give an appearance of authority' in a manner that is 'brought home to the agent.'" *Allstate Ins. Co. v. Banco Do Estado Do Rio Grande Do Sul*, 2004 WL 1398437 (S.D.N.Y. June 23, 2004) (citing *Greene v. Hellman*, 51 N.Y.2d 197, 204, 412 N.E.2d 1301 (1980)).

Harken argues that the Contract and Complaint raise a question of fact as to whether SIS/BSPS acted with actual or apparent authority to bind BFS and Ridge to the terms of the Contract. (R. 28-1, Response, pp. 6-10). Harken's Complaint, however, does not contain any

allegations regarding SIS/BSPS's authority sufficient to raise Harken's right to relief above the speculative level.

**II.     Actual Authority**

The only argument presented by Harken in support of its claim of actual authority is that the parties' prior course of dealing reveals that SIS/BSPS had actual authority to bind its affiliates. The Complaint, however, is devoid of allegations that reveal a "direct manifestation" from BFS or Ridge, the principals, to SIS/BSPS, the agent, regarding SIS/BSPS's authority to bind BFS or Ridge.[2] *See Reiss*, 235 F.3d 738, 748 (2d Cir. 2000) (applying New York law). In addition, while the Complaint details prior agreements and dealings between Harken and SIS/BSPS, neither BFS nor Ridge was a party to those earlier agreements. Harken alleges that the Letter of Intent was between Harken's founder and ADP/SIS and its affiliates, that the June 30, 2006 Letter was between Harken and ADP/SIS, and that both the Letter of Intent and the June 30, 2006 Agreement contained similar non-compete provisions to the non-compete provision contained in the Contract. (R. 1-1, Complaint, ¶¶ 10-17).

There are no allegations in the Complaint, however, that refer to any conduct or communications on the part of BFS or Ridge. Harken has therefore failed to present allegations in its Complaint to establish that BFS or Ridge's prior conduct is sufficient to establish that SIS/BSPS had actual authority to act on their behalf. *See, e.g., Allstate Ins. Co. v. Banco Do Estado Do Rio Grande Do Sul*, 2004 WL 1398437 (S.D.N.Y. June 23, 2004) (dismissing complaint against defendant where plaintiff failed to allege actual authority or implied actual

---

[2] Indeed, the Complaint does not contain any allegations stating that Harken acted as the agent of BFS or Ridge. While Harken alleges an agency relationship in its Response, "[a] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

authority because plaintiff did not demonstrate (i) that signatory to contract operated as an agent of defendant or accepted grant of power from defendant, or (ii) that defendant exercised extensive control over signatory's operations or intended signatory to act as its agent when entering into the contract) (applying New York law). *See also Orix Credit Alliance v. Taylor Mach. Works*, 125 F.3d 468, 475 (7th Cir. 1997) (implied actual authority not established because mere fact that agent had entered into agreements with principal's dealers did not suggest that agent could bind principal to separate repurchase agreement) (applying Illinois law). Because Harken fails to allege any conduct or communications on the part of BFS or Ridge to establish actual authority, Harken's Complaint does not state a cognizable claim for breach of contract against BFS or Ridge based on a theory of actual authority.

### III. Apparent Authority

Harken also makes several arguments to support its contention that "[i]t is apparent from the face of the [Contract] alone that BSPS acted with at least the apparent authority to bind its corporate affiliates BFS and Ridge." (R. 28-1, Response, p. 6.) First, Harken argues that the fact that the non-compete and warranty provisions of the Contract purport to bind SIS/BSPS *and its affiliates* demonstrates the apparent authority of SIS/BSPS to bind BFS and Ridge. *Id.* at pp. 6-7. This argument fails, however, because "the existence of a principal/agent relationship and the creation of apparent authority depend crucially on the words or actions of *the principal* to state a claim sufficient as a matter of law." *Adams v. Labaton, Sucharow & Rudoff LLP*, 2009 WL 928143 (S.D.N.Y. Mar. 20, 2009) (emphasis in original) (applying New York law). *See also Ferrostaal, Inc. v. M/V Sea Baisen*, 2004 WL 2734745 (S.D.N.Y. 2004) ("Apparent authority, then, is 'normally created through the words and conduct of the principal as they are interpreted by a third party, and cannot be established by the actions or representations of the agent.'")

(internal citations omitted) (applying New York law). While provisions of the Contract refer to affiliates of SIS/BSPS, Harken has not pled any facts regarding BFS or Ridge's words or actions to establish a claim of apparent authority. Accordingly, Harken's breach of contract claim against those Defendants fails as a matter of law. *See, e.g., Adams*, 2009 WL 928143 (dismissing complaint where party failed to plead any facts suggesting that principal made any affirmative actions to create the appearance of authority in the agent necessary to bind the principal to the agent's words).

Harken also argues that the "parties' prior course of dealing further compels the conclusion that the parties intended BSPS' affiliates to be bound by the two provisions at issue" and that the "nature of the parties' relationship further supports" this conclusion. (R. 28-1, Response, pp. 7-9). Again, however, Harken presents no allegations that demonstrate any communications, direct or implied, by BFS or Ridge, to establish an agency relationship with SIS/BSPS as required by New York law. Neither BFS nor Ridge was a signatory to the earlier agreements entered into by SIS/BSPS and its predecessors, and the terms of the earlier non-compete provisions do not reveal any communications or actions on the part of BFS or Ridge. Moreover, in describing the "nature of the parties' relationship," Harken again fails to cite to any actions or communications on the part of the alleged principals, BFS or Ridge. Accordingly, Harken has failed to alleged facts sufficient to establish an agency relationship based on apparent authority. *See, e.g., Dover Ltd. v. A.B. Watley, Inc.*, 423 F. Supp. 2d 303, 321 (S.D.N.Y. 2006) (no finding of apparent authority where claim of apparent authority was based on paperwork which did not contain any concessions by party that it was acting as an agent or suggestions regarding alleged agent's ability to act on principal's behalf) (applying New York law); *Rozsa v. May Davis Group, Inc.*, 187 F. Supp. 2d 123, 130 (S.D.N.Y. 2002) (breach of contract claim

dismissed where plaintiff failed to plead allegations that constituted representations or conduct directed by the purported principal to a third-party) (applying New York law).

Based on the allegations in the Complaint, BFS and Ridge cannot be held liable for breach of contract because neither entity was a party to the contract. Moreover, Harken's Complaint contains no allegations establishing that SIS/BSPS acted as an agent of BFS or Ridge, or that BFS or Ridge intended to be bound by the terms of the Contract. Harken has therefore not pled sufficient facts to establish that SIS/BSPS was acting with actual or apparent authority to bind BFS or Ridge when it entered into the Contract with Harken that raise its "right to relief above the speculative level." *Twombly,* 550 U.S. at 555. *See also Cannon v. Douglas Elliman, LLC*, 2007 WL 4358456 (S.D.N.Y. Dec. 10, 2007) (complaint dismissed where plaintiff only made conclusory allegations of an agency relationship but offered no facts from which inferences of actual or apparent authority could be drawn). Accordingly, the Court grants Defendants BFS and Ridge's Motion to Dismiss without prejudice.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants BFS and Ridge's Motion to Dismiss without prejudice. The Court grants Plaintiffs leave to re-plead by November 19, 2009.

DATED: October 29, 2009                 ENTERED

                                                       AMY J. ST. EVE
                                                       United States District Court Judge